May I begin? Thank you. Good morning, Your Honors. Timothy Garrison, a Federal Defender of San Diego, on behalf of Mr. Velasquez-Rubio. May it please the Court, today I will be addressing in my argument two evidentiary issues. Number one is the admission of a May sworn statement of record against Mr. Velasquez-Rubio, and number two is the admission of the September record of sworn statement against Mr. Velasquez-Rubio and his prosecution for a violation of 8 U.S. Code 1326. I think that the main issue as to admission of both of these documents is whether or not it was an adoptive admission, or either of them were adoptive admissions. For the sake of clarity, I will address the May one first, even though it came second in the trial. With regards to the May sworn statement, that sworn statement, there was no foundation laid for it. The person who testified and who the prosecutor got the document into evidence through was not the person who created that document. Under this circuit's case law, namely U.S. v. Oriana Blanco, which is on point with this case in so many ways, that should not have come in. Also, it was a clear violation of the Confrontation Clause and the jurisprudence as laid out most recently in Crawford. It was a violation of the Confrontation Clause? It was a violation. Did Crawford have to do with statements from people who aren't defendants that are being introduced against and used against the defendant? Did Crawford? Yes, Your Honor. Crawford did. And the problem with both of these statements is the record of sworn statement. The actual physical piece of paper was introduced into evidence. The September statement, though, the agent who took it testified, unlike Orlano, right? Yes, Your Honor. Let's assume for a minute. If you assume that the May statement shouldn't have been admitted, how does it rise to reversible error? It rises to reversible error on these grounds, Your Honor. Basically, when you're dealing with a harmless error type analysis, I think that there's a spectrum that the court has to look at, and namely whether or not this error was harmful. Now, there's cases I've cited in my briefs, such as Vizcarra, United States v. San Juan Cruz, Oriana Blanco. And those cases stand for the proposition that when the government chooses to rely upon evidence so heavily in their case, that that pushes it more and more away from harmless error towards harmful error. For example, in San Juan, U.S. v. San Juan Cruz, there were. Let me ask you this, counsel. Didn't or weren't the facts that Mr. Vasquez wasn't a citizen, that he had no legal right to be in the U.S., and that he'd been previously deported from the U.S., he hadn't any legal right to be here. Weren't those facts either stipulated at the time of trial or included in exhibits that were admitted that were not objected to? I believe they were included in some exhibits that weren't objected to, but also I believe what Your Honor is referring to is there was a stipulation. Stipulation that in 2004, Mr. Vasquez had appeared in the court and had made those admissions in magistrate court. Yes, Your Honor. However, that did not, even if the jury was to credit all of those admissions, that did not prove the prosecution's case. There was still an additional element they needed to meet, and because it wasn't like it happened the day before the trial. This happened with some time period elapsing. Therefore, when he was brought to trial on this case, the government still had to prove beyond a reasonable doubt that he had not received permission from the Attorney General to reapply to come into the United States. Now, that's just one of the elements. Well, that is the element that the stipulation does not go to. Now, with regards to the... Had he received permission, he certainly would have put it in to evidence. Well, that comes to another place here where the issue is, in this case, it was a reasonable doubt trial. Mr. Vasquez did not testify. His defense was based upon basically showing inconsistencies and unreliability of the evidence against him and arguing to the jury that because of those facts, the government had not proved their case beyond a reasonable doubt. And as such, the admission of the actual documents was very prejudicial to him because of the fact that not only did it bolster the testimony of the A-file custodian, and the A-file custodian is really the star witness in a 1326 prosecution. They're the ones that go through the A-file that testified to that element that he had not received permission to come back into the United States. So he was exercising his right not to testify. And his defense was that they could not prove beyond a reasonable doubt. And that is where I think the real problem with the case arose. I just want to make a notation, though, that these documents were not adopted admissions. And there was no evidence in the record that either the May or the September sworn statements were heard, understood, or acceded to by Mr. Velazquez-Rubio. I agree with you on the September one. Why do you say that about the May one? The May one is even more in line with Oriana Blanco than the September one is. The May one came first. It was May 2004 and then September 2004, I believe. And the May 2004, the officer who recorded in a writing form that interview did not even testify. And in Oriana Blanco, the officer who testified was not the officer who made it, just the officer who gave the Miranda warnings in that case. And the Ninth Circuit specifically said that if the government wanted to put on the evidence that was contained in that document, they should have called the person who he made these supposed admissions to. So the May one, we would submit, is directly controlled. Well, both of them are directly controlled, but the May has even more facts that put it right on point with Oriana Blanco. Counsel, I think the September one is probably the stronger one in terms of an adoptive admission. How do you say that it's not distinguishable from Oriana? Because it was the person who took the statement testified. There was a person who understood Spanish who read the questions and verbatim typed the answers. So why isn't that different than Oriana Blanco? Because of the fact that Oriana Blanco specifically sets out the standard that for it to be admitted as an adoptive admission, there must be a sufficient foundational showing that the person heard, understood, and acceded to the statement. And that showing was made for the September one. There was no question regarding the content of the recording of the answers was not questioned. There was nothing said to be improper or inaccurate about the translation. So why wasn't the foundational requirement met? The foundational requirement was not met because the agent testified at trial that he had read the questions to Mr. Velazquez in Spanish, but he did not read the answers in Spanish. He did not, once the form was completed, which at that point is a record of a police interrogation. Once the form was completed, he did not go back and say, Mr. Velazquez, read it back to him in Spanish. And then if that's all true, go ahead and sign it. There was no contest regarding whether or not those answers were accurate. Well, with all due respect, Your Honor, there was a contest because of the fact that Mr. Now, the government contends that they were a verbatim transcript. However, they were not a verbatim transcript. The answers were specifically challenged as being wrong. None at the trial court level, Your Honor. The point about it is that it goes to prejudice, the prejudice that was shown because of what the government did in this case. At this point, Your Honor, I'd like to reserve the rest of my time for rebuttal. Good morning, Your Honors. I'm Christopher McFadden, and I represent the United States. I think at the end of the day, even if these two sworn statements should not have been admitted, the evidence in this case was overwhelming, and there's no basis to disturb the jury's verdict. And if there was error, it was harmless. I do review because, with all respect to everybody here, I really have a problem with the translation, the failure of the agent, the second statement, the agent, to read both the question and the answer in Spanish so that it could be treated as an adoptive admission when the defendant actually signed it. You didn't know what he was signing. And so what I'm struggling with is now what was the other evidence that would overwhelmingly show guilt so that that would be deemed harmless error for failing to admit it? Sure. The elements of the case, there are three elements. It's that the defendant is an alien, that he's been previously deported, and that he's been found in the United States without permission. And I think we proved that in at least six different ways, Judge. The trial attorney. Why did you offer these two statements? I didn't mean to interrupt your answer. Judge, the board lost question. Why were they offered? You were guilty. Were you guilty in the lily? Do you know what that is? I've heard the expression, yes, Judge. Overkill. When we look back now with 20-20 hindsight, I think it's possible to say that we didn't need or the trial attorney did not need those two sworn statements. But at the time of the trial where the government bears the burden of proof and it's the highest standard in the legal system, it's difficult to know if you've met that standard at any given point in time. And it's often perilous to guess. And in that regard, I'd like to point out, I think that the district judge, when he admitted the evidence, the district judge was working very hard to make sure that there was a fair trial in this case. I think if we look at the transcript, there are several points where both parties had an opportunity to argue whether the evidence should have been admitted. The district judge gave sensible and thoughtful rationale for the decisions he made in terms of redacting or not redacting evidence. And I think there's no dispute everybody acted in good faith. No. Now outline the other overwhelming points. I have the same question, particularly of the USAs in San Diego. Because they do that often and then it creates error and that's what creates the appeal. I understand. And I will tell that to people in our office as well. Let me start with the stipulation, which was Government Exhibit 8. The defendant stipulated, first of all, that he was in federal court just three months before he was arrested in this case. That he sat under penalty of perjury enough to establish all three of the elements. Secondly, there were the defendant's field admissions. Wait, the without permission part for this? Without permission? The defendant was asked in the field by the Border Patrol agent, did he have any immigration documents on him? And his answer was no. Third, there were all of the properly admitted documents from the defendant's safe file, even putting aside the two storm statements, which included a notice to appear, a deport order from the immigration judge, and then warrants of deport, which this court has said in Behena Cardenas. Those types of forms, which are also known as I-205s, those are routine, unambiguous facts to establish that the person has been deported. And if he's been deported, that's highly circumstantial evidence that he's also an alien and that he had no permission to be in the U.S. There was some discussion as to the third element. Did he really not have permission to be in the U.S.? And there was testimony, again, from the AFILE custodian and from another person. And that testimony was undisputed. And that showed that both of these people had reviewed the defendant's file and that they found no documents showing that he had permission to be there. Now, I realize, and I think it was set up in the briefs by defense counsel, the AFILE custodian was cross-examined, but these were questions such as, well, the AFILE custodian wasn't personally there when the defendant was deported. Well, again, that goes back to Behena Cardenas. You don't need the personal testimony of someone with personal knowledge to establish that. Or the fact that the AFILE was in Vermont for some time. Well, that's how records are kept in the federal system, and that happens in every case. So we also have the testimony, as I said, of the AFILE custodians. Apart from that, an argument that often is made is that it's circumstantial evidence that someone did not have permission to be in the U.S. just based on where the person is found. In this case, he was found in the wilderness just two miles north of the border. If he had permission, it's more likely than not that he would have come in through some other lawful avenue. I thought there was a situation where the defendant informed the trial judge they weren't contesting the third element of he didn't ask for or receive permission. And that's right. That was said in a sidebar. Obviously, that wasn't on the record. As the defense counsel said, this was a reasonable doubt case. But it doesn't seem that that was an element that was being contested. And certainly there was no evidence to contradict the government's evidence on that point. Going back to the September sworn statement, if I could just, again, just make clear, the exhibit was blown up and it was shown to the jury. But apart from that, the agent, who was the arresting agent, testified from his own personal knowledge as to the questions that he asked and the answers that he received from the defendant after the defendant had been Mirandized. And that's all at pages 24 through 29 of the record. The other issues in this case, I think, have been set forth in the briefs, and I don't feel the need to go over them. There's one thing that's concerning me about the A file testimony, and it has to do with another case we heard this week at the filing place that all the A files were kept for Nevada, Hawaii, California. You said these records were kept in Vermont? There was testimony in the record. They were in San Diego at a substation for a while. I believe they were in Vermont for a while. I think that's on page 85 or so of the record. The only reason I'm asking, and you might want to alert your office to this, too, and, in fact, I think this comes out of your office, some employees of the substation in Southern California where A files were kept And are you aware of anything the government's doing when they're using these A files, which may have been subject to some of these people destroying their contents? I don't know anything outside of the record in terms of that. I do think that at the trial, I think defense counsel was trying to get to some of those questions, an objection was made, and the objection was sustained. So there's nothing in the record to suggest that these A file documents were at all caught up in anything that might have been related to that. I don't think there's any basis to challenge that these A file documents were kept in the Norden. I mean, obviously, but I'm just curious about that whole situation. I know. I really don't know the answer to that, Judge. Sorry, I can't be more helpful on that. All right. Well, we have a few. No. Thank you. Thank you. Your Honor, just a brief response. With regards to the third element, that's sometimes in a reasonable doubt trial 1326, that's all that you really have. And Judge Bonita specifically asked defense counsel during the trial, are you contesting that? He said, I don't remember the exact thing, but is he seriously contending that or something? And she, during the sidebar, said no. However, the whole, it's set up because these are paper files. They have two prongs on them. Very frequently there's different files. The argument centers around the fact that it would be easy to lose a document out of these files. Also, routinely we are not allowed to talk about that problem with the substation, but that goes to it as well. Were there documents that somehow are not here? I'm sorry, I don't get it. Routinely you're not allowed to talk about that? No. Why? Is that policy? I mean, it was a public trial. Well, unless, my understanding of it is, Your Honor, is that unless we can show that, make some kind of prima facie showing that our client's documents were there. There at the particular time. Then it's held irrelevant and excluded. But the point of the whole thing is that it's very possible that documents fall out of these,  That's something the prosecution has to overcome beyond a reasonable doubt. And so regardless of putting in any evidence or not putting in any evidence, that's an argument that the defense was making. And so that goes to why this was harmful and if there's no other questions. Thank you, counsel. U.S. v. Alaska's Rubio is submitted.
judges: Wardlaw, Rawlinson, Cebull